IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDON COMER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| -vs- | )    Case No. CIV-21-0661-F |
| | ) |
| OKLAHOMA DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
|    Defendant. | ) |

## ORDER

    Defendant, the Oklahoma Department of Corrections, moves to dismiss this action under Rule 12(b)(6). Doc. no. 7. Plaintiff Brandon Comer has filed a response brief, objecting to dismissal. Doc. no. 13. Defendant filed a reply brief. Doc. no. 14.

    For the reasons stated below, the motion will be granted in part and denied in part.

### I. Introduction

    This Title VII employment action alleges that defendant discriminated against plaintiff (disparate treatment) based on plaintiff's classification as a gay male (first cause of action). This action also alleges that defendant retaliated against plaintiff for protected activity (second cause of action). The petition (hereafter referred to as the complaint) alleges that defendant's adverse actions created a hostile working environment which caused plaintiff to resign, constituting a constructive discharge.

Defendant moves to dismiss, contending the complaint is merely conclusory and does not allege sufficient facts to state a plausible claim of discrimination or retaliation.

## II.  Standards

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  *Id*.  The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  Ridge at Red Hawk, 493 F.3d at 1177.

In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility.  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will

2

… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Documents attached to pleadings are only considered to show their contents, and not to prove the truth of the matters asserted therein. *See* Tal v. Hogan, 453 F.3d 1244, 1264, n. 24 (10th Cir. 2006) (addressing a Rule 12(b)(6) motion).  As applied here, the court takes this principle to mean that while the court may take notice of the exhibits attached to the complaint, both of which are communications apparently sent by the plaintiff, the court is not permitted to take the statements within those exhibits as true for purposes of determining whether plaintiff has alleged a plausible claim for relief.  Thus, statements within the exhibits stand on a different footing than do allegations within the four corners of the complaint.[1]

The 12(b)(6) standard does not require plaintiff to establish a prima facie case of discrimination in his complaint; however, the elements of plaintiff's prima facie case may help the court determine whether plaintiff has set forth a plausible claim. Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).  In this case, testing the allegations against the prima facie elements of plaintiff's claims provides helpful guidance with respect to both the discrimination claim and the retaliation claim.

### III.  The Discrimination Claim

Khalik states that to set forth a prima facie case of discrimination, a plaintiff must establish:  1) that plaintiff is a member of a protected class, 2) that plaintiff suffered an adverse employment action, 3) that plaintiff is qualified for the position at issue, and 4) that plaintiff was treated less favorably than others not in the

---

[1] This makes sense because the allegations are subject to the pleading requirements of Rule 11, Fed. R. Civ. P., whereas the exhibits are not.

protected class.  Khalik, 671 F.3d at 1192.  Although articulation of a prima facie case of discrimination may vary depending on the context of the claim, the critical prima facie inquiry is whether plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.  *See* DePaula v. Easter Seals El Mirador, 859 F.3d 957, 969-70 (10th Cir. 2017) (addressing prima facie elements in the context of a summary judgment motion).

The complaint alleges that plaintiff, as a gay male, is a member of a protected class;[2] that plaintiff suffered an adverse employment action consisting of a hostile working environment which ultimately led to his constructive discharge; and that plaintiff was qualified for his position (case manager) at the Clara Waters Community Correction Center, where he performed his job in a more than satisfactory manner.  Accordingly, the allegations are sufficient to meet prima facie elements one, two and three.

Where the complaint falters is with respect to the fourth element, relating to circumstances which give rise to an inference of discrimination, such as allegations that plaintiff was treated differently from similarly situated employees.

The complaint alleges that Warden Randy Matthews "created an extremely hostile work environment for Comer that was designed and intended to cause Comer to resign from DOC when Comer's request to transfer to another DOC penal facility was denied."  Doc. no. 1, ¶ 11.  The complaint alleges plaintiff was intentionally

---

[2] *See generally* Bostock v. Clayton County, Georgia, __ U.S. __, 140 S. Ct. 1731, 1754 (2020) ("In Title VII, Congress adopted broad language making it illegal for an employer to rely on an employee's sex when deciding to fire that employee.  We do not hesitate to recognize today a necessary consequence of that legislative choice:  An employer who fires an individual merely for being gay or transgender defies the law.").

discriminated against because he is a gay male. *Id*. at ¶ 16. The complaint alleges that defendant took adverse actions against plaintiff up to and including plaintiff's constructive termination, and that defendant treated plaintiff differently from similarly situated employees. *Id*. These allegations, however, are merely conclusory and do not move the needle for purposes of Rule 12(b)(6).

As for non-conclusory allegations, the complaint alleges that plaintiff's status as a gay male was well known in the workplace by both co-workers and management. *Id*. at ¶ 7. The complaint alleges Matthews has a demonstrated sexual-orientation and gender bias in the workplace. *Id*. at ¶ 8. And the complaint alleges that as a result of this bias, plaintiff sent a formal letter and an email (the exhibits to the complaint), by which plaintiff intended to oppose what he "reasonably believed to be unlawful behavior that was motivated by sex/sexual orientation bias." *Id*. While these allegations are not conclusory, they do not allege any particular way in which plaintiff was treated differently from similarly situated employees. Nor do they allege any particular conduct by defendant which was based on plaintiff's status as a gay male. These allegations do not give rise to an inference of discrimination (disparate treatment) based on plaintiffs' status as a gay male.

The only non-conclusory allegations regarding illegally motivated conduct are allegations which relate to *retaliatory* conduct. In ¶ 10 of the complaint, plaintiff alleges that he was assigned extra work with unrealistic due dates, that he was issued write-ups related to his job performance, and that he was falsely accused of sending nude photographs of himself to a male co-worker. *Id*. at ¶ 10. Consistent with the understanding that this conduct was retaliatory (as opposed to discriminatory conduct motivated by plaintiff's status as a gay male), the conduct described in ¶ 10 is alleged to have occurred after plaintiff communicated his concerns about

Matthews to his employer via the letter and email attached to the complaint. *See id*. at ¶¶ 8, 10.

The only other, non-conclusory allegations in support of the discrimination claim relate to Matthews belittling a female employee. *Id*. at ¶ 9. To the extent this allegation is relevant at all, it suggests Matthews treated females and males equally, if poorly.

Finally in this regard, the court notes the exhibits attached to the complaint. These exhibits are not conclusory, but they do not help plaintiff at this stage. Plaintiff does not rely on the exhibits to establish the plausibility of his claims; nor could he, as the court is not permitted to consider the exhibits for the truth of the statements within them. *See* Part II of this order (Standards), citing Tal, 453 F.3d at 1264, n. 24.

In summary, no allegations describe, in non-conclusory terms, any disparate treatment or other circumstances which give rise to an inference of discrimination based on plaintiff's status as a gay male. As a result, the complaint fails to state a discrimination claim. Absent amendment, the first cause of action will be dismissed.

## IV. The Retaliation Claim

To set forth a prima facie case of retaliation, plaintiff must establish: 1) that plaintiff engaged in protected opposition to discrimination, 2) that a reasonable employee would have found the challenged action materially adverse, and 3) that a causal connection exists between the protected activity and the materially adverse action. EEOC v. PVNF, L.L.C., 487 F.3d 790, 803 (10th Cir. 2007).

Defendant challenges the sufficiency of the retaliation claim on grounds related to the first and third elements.[3] Defendant notes the complaint includes exhibits—the letter and an email apparently authored by the plaintiff and sent to officials at the Department of Corrections—which the complaint relies on to constitute protected activity. Defendant argues the complaint does not allege that Matthews, whose conduct is criticized in these two documents,[4] received these communications or knew about them. Defendant also argues the allegations do not establish a sufficiently close temporal connection between plaintiff's alleged protected activity and his constructive discharge. These arguments challenge the sufficiency of the allegations to support the causation element. In addition, defendant argues the letter and email do not contain allegations of gender or sexual orientation bias and thus do not constitute protected activity.

The court takes the last argument first. As previously stated, the court is not permitted to take as established the statements made by plaintiff in the email. What the court may do, however, is take notice of the contents of the email.[5] True or not, the statements made by plaintiff in the April 22, 2020, email constitute

---

[3] The court has already found that the second element, a materially adverse employment action, is plausibly alleged.

[4] The letter of April 16, 2020 (doc. no. 1-1) addresses poor working conditions at the Clara Waters Community Corrections Center and focuses on Matthews' conduct, but it does not appear to address illegal discrimination. The email of April 22, 2020 (doc. no. 1-2, p.1) states plaintiff's feeling that Matthews was pressuring Mrs. Robinson to find ways to write plaintiff up, so the write-ups would go in plaintiff's file and plaintiff would not be able to promote within the agency. The email also includes the statement: "I [plaintiff] do not know if Mr. Matthews doesn't like me due to my sexual orientation. I know that Mr. Matthews [was] mistreating and discriminating towards an offender who was a homosexual before I transferred up here. What Mr. Matthews is doing is not right and also against State and Federal law to discriminate." *Id*.

[5] Defendant does not dispute the existence of the email, its contents, its date, its sender or its recipients, all of which are apparent on the face of the email.

communications to plaintiff's employer indicating plaintiff's belief that his employer had engaged in illegal discrimination. *See generally* Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee, 555 U.S. 271, 276 (2009) (noting with approval government's argument that when an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity). The court finds that the April 22, 2020, email attached to the complaint plausibly constitutes protected activity.

As for allegations to show causation, the face of the email indicates it was sent on April 22, 2020, and that it was sent to officials at the Department of Corrections including Director Scott Crow. Doc. no. 1-2, p. 1. As already mentioned, the email includes statements which are critical of Warden Matthews. *Id*. at pp. 1-2. Together, these facts support a reasonable and plausible inference that Matthews learned of the email prior to plaintiff's constructive discharge, a fact which is not alleged but which plaintiff may not be privy to at this stage. The retaliation claim will not be dismissed for failure to allege that Matthews learned of the alleged protected activity prior to plaintiff's constructive discharge.

The email also shows the temporal connection between the email and plaintiff's alleged constructive discharge. The email was sent on April 22, 2020, which is approximately six weeks before June 2, 2020, the alleged date of constructive discharge. Doc. no. 1, ¶ 12. Six weeks between protected activity and an adverse employment action constitutes a sufficient temporal connection to support causation. *See* Meiners v. University of Kansas, 359 F.3d 1222, 1231 (10th Cir. 2004) ("A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing

alone, is insufficient."). Given the temporal relationship between alleged protected activity and an adverse employment action, the complaint sufficiently alleges causation.

The retaliation claim is plausibly alleged and will not be dismissed.

## V. Conclusion

After careful consideration, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** with respect to the discrimination claim alleged in the first cause of action. Accordingly, the first cause of action, if not amended as permitted below, is **DISMISSED** with prejudice under Rule 12(b)(6). The motion is **DENIED** with respect to the retaliation claim alleged in the second cause of action.

If plaintiff believes he can allege a plausible discrimination claim, he may file a first amended complaint for that limited purpose within fourteen days of the date of this order. If plaintiff does not do so, the first cause of action will, at that time, be deemed dismissed as stated above, without need of a separate order.

IT IS SO ORDERED this 24th day of November, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0661p004.docx